UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HILBORN & HILBORN, P.C.,  Case No. 18-13183
    Plaintiff,

v.

WOLFF ARDIS, P.C., and  HON. AVERN COHN
PATRICK ARDIS
    Defendants.
_____/

# ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This is a breach of contract case. Plaintiff, Hilborn and Hilborn, P.C. ("Hilborn"), is suing Defendants, Wolff Ardis, P.C. ("Wolff") and Patrick Ardis,[1] for breaching an attorney fee agreement. (Doc. 1). Hilborn is a Michigan law firm and Wolff is a Tennessee law firm. Patrick Ardis is an attorney, and the President of Wolff Ardis P.C.

Hilborn is suing for the breach of an attorney fee agreement that relates to the joint representation of a Canadian client who was involved in an automobile accident. The automobile accident took place in Tennessee, the underlying lawsuit was litigated in Tennessee, and the attorney fee agreement is governed by Tennessee law. (Docs. 1, 11). The complaint states the following claims (Doc. 1):

    1. Breach of the Agreement
    2. Quantum Meruit
    3. Conversion
    4. Constructive Trust

---

[1] Although the complaint names Patrick Ardis, the claims are directed at the actions of Wolff Ardis P.C. Thus, any reference to "Wolff" also contemplates actions that may or may not be attributable to Patrick Ardis as an individual. The distinction is immaterial for purposes of this motion.

Defendants have filed a motion to dismiss. (Doc. 11). Defendants say that an exercise of personal jurisdiction would be unconstitutional. Defendants also say that venue is improper, and even if venue is proper, this Court should transfer the case to Tennessee. As discussed below, the Court does not have personal jurisdiction over Defendants. Thus, Defendants' Motion to Dismiss (Doc. 11) is GRANTED.

## II. BACKGROUND

This case involves the dispute of a fee agreement between two law firms regarding the joint representation of a personal injury case that was litigated in Tennessee. Both Hilborn and Wolff represented Filip Miler—a Canadian citizen residing in Windsor, Ontario. In the underlying personal injury case, Filip Miler sued for personal injuries arising from an auto accident that occurred in Nashville, Tennessee.

After being injured in Tennessee, Miler contacted Hiborn regarding legal representation in his personal injury case. Hilborn subsequently contacted Wolff to act as local counsel in the case. Hilborn and Wolff entered into a fee sharing agreement. The fee agreement was a contingency-based agreement, in which Hilborn and Wolff would take 40% of any damages award and split the 40% fee equally (50/50). Hilborn concedes that Tennessee law applies to the fee agreement, because Michigan law does not allow for a contingency fee of 40% in personal injury cases. See Michigan Rules of Professional Conduct 1.5; M.C.R. 8.121.

The personal injury case was filed in Tennessee. Prior to trial, Hilborn says that Wolff was connected to Michigan in the following ways:

- The attorney fee agreement created a contractual relationship with Hilborn, in Michigan (although the contract was never signed by Wolff).
- Wolff attorneys appeared for Michigan depositions via telephone or video.

2

- Geoffrey Gaia, a Wolff attorney, was physically present for the depositions of Filip Miler and Dusko Stojic.[2]
- "Hundreds" of telephone calls, letters, and electronic messages that took place between Wolff and Hilborn during the three years of pre-trail preparation.
- The deposition of a medical doctor, Dr. Oladayo Shobola, taken by Wolff attorneys in Detroit.[3]

Hilborn participated in the underlying lawsuit after filing an appearance in Tennessee *pro hac vice*. However, shortly before trial, Hilborn's sole owner, Craig Hilborn, was forced to stop representing Filip Miler because he lost his license to practice law after pleading guilty to two counts of wire fraud in the United States District Court for the Eastern District of Wisconsin.

### III. LEGAL STANDARD

A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(2) compels a federal district court to examine whether the court can exercise personal jurisdiction over a defendant. "The plaintiff bears the burden of establishing the existence of personal jurisdiction." AlixPartners, LLP v. Brewington, 836 F.3d 543, 548 (6th Cir. 2016)(citing Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989)). The plaintiff's burden is "relatively slight," and a plaintiff can "meet[] this burden by setting forth specific facts showing that the court has jurisdiction." Id. (citing Air Products and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 549 (6th Cir. 2007))

---

[2] Hilborn submits the deposition transcripts for Filip Miler and Dusko Stojic as evidence that attorney Geoffrey Gaia was physically present at these depositions. Hilborn points to the absence of any indication in the transcript that Mr. Gaia was appearing by video. However, despite being present at these depositions, Hilborn does not state in his affidavit that Mr. Gaia was present. On the other hand, Mr. Gaia submitted an affidavit that states he was not present during these depositions.

[3] Although Hilborn appears to suggest that Wolff attorneys were physically present during this deposition, Wolff submits the deposition transcript and an accompanying affidavit that shows the deposition was taken via videoconference.

3

(internal quotations omitted). "The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weight the controverting assertions of the party seeking dismissal." Id. (quoting Air Products, 503 F.3d at 549) (internal quotations omitted).

### IV. APPLICABLE LAW

Hilborn asserts jurisdiction pursuant to Michigan's long-arm statutes, M.C.L. 600.705 and M.C.L. 600.715. These statutes permit an exercise of jurisdiction over persons and businesses who "transact[] any business within the state." M.C.L. 600.705(1); M.C.L. 600.715(1). Defendants do not dispute that they are subject to Michigan's long-arm statute, but instead argue that the Court's exercise of personal jurisdiction would be unconstitutional.

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." Reynolds v. Int'l Amateur Atheletic Fed'n, 23 F.3d 1110, 1115 (6th Cir. 1994).

When determining whether an exercise of personal jurisdiction would violate due process, "the relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The Sixth Circuit uses a three-prong test to guide district courts:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities

4

> there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant fair and reasonable.

Beydoun v. Wataniya Restaurants Holding, Q.S.C., 768 F.3d 499, 505 (6th Cir. 2014) (quoting Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

"'Purposeful availment . . . is present where a defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum state, and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.'" Id. (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002)) (emphasis in original). "Courts require purposeful availment to [e]nsure that random, fortuitous, or attenuated contacts do not cause a defendant to be haled into a jurisdiction." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985)) (internal quotations omitted). A defendant's contacts with the forum must "create a 'substantial connection' with the forum." Burger King Corp. v, 471 U.S. at 474-75 (quoting World-Wide Volkswagen, 444 U.S. 286, 297 (1980)). Absent a showing of purposeful availment, courts lacks personal jurisdiction over a defendant, and must dismiss the case. See, e.g., MLS Nat. Med. Evaluation Services, Inc. v. Templin, 812 F.Supp.2d 788, 805 (E.D.Mich. 2011) ("Because Plaintiff has failed to make a *prima facie* showing as to this or the "purposeful availment" prongs of the due process inquiry, the Court finds that this case must be dismissed for lack of personal jurisdiction.")

5

## V. ANALYSIS

Generally, an attorney or law firm cannot be hauled into an out-of-state forum on the sole basis that they agreed to represent an out-of-state client. There is, of course, an expected number of contacts with an out-of-state forum that will naturally arise from the representation of an out-of-state client. But without more, a court cannot constitutionally exercise personal jurisdiction in such situations.

This Court's analysis need only focus on the "purposeful availment" prong of the personal jurisdiction test because Hilborn's failure to establish this prong strips the Court of its jurisdiction over Defendants. Out-of-state contacts that arise from coordinating a case with an attorney who has been admitted *pro hac vice* are insufficient, by themselves, to establish purposeful availment. For example, in Klein Frank, P.C. v. Girards, 932 F.Supp.2d 1203 (D.Colo. 2013), an attorney from Colorado sued co-counsel from Texas, in Colorado. The Colorado lawsuit related to a fee agreement based on a personal injury case that was litigated in Texas. The court recognized that defendants had made several contacts with Colorado during the Texas lawsuit, including (1) entering into a contractual relationship with a Colorado attorney, (2) sending over sixty emails and repeated calls to co-counsel's offices in Colorado, and (3) making a *pro hac vice* appearance with co-counsel in a different, unrelated Colorado case. Nevertheless, the court held that "neither defendants' routine communications with [plaintiff] nor defendants' activities on behalf of [the client] in Texas can, by themselves, establish personal jurisdiction." Id. at 1214 (citing Sher v. Johnson, 911 F.2d 1357, 1363 (9th Cir. 1990) ("[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited at its home state and takes no affirmative action to promote

6

business within the forum state."); Katims v. Millen White, Zelano & Branigan, P.C., 706 F.Supp.2d 645, 649 (D.Md. 2010) ("case law overflows on the point that providing out-of-state legal representation is not enough to subject an out-of-state . . . law firm to the personal jurisdiction of the state in which a client resides."); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999) ("when a lawyer chooses to represent a client in another forum, that in itself does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum."). Furthermore, "the mere quantum of contacts between the forum and defendant is not determinative . . . [t]he 'nature and quality' of defendants' communications with [plaintiff] do not establish [an] intent to solicit a business venture in Colorado, but merely reflect 'occasional acts' necessary to effectuate the parties' contract." Id. Thus, the court in Klein Frank dismissed the case for lack of personal jurisdiction "[b]ecause [plaintiff] d[id] not allege sufficient facts to show that defendants purposefully availed themselves to the benefits and protections of Colorado. . . ." Id. at 1216.

Here, Defendants have not purposefully availed themselves to the benefits and privileges of conducting business in Michigan. Like the defendants in Klein Frank, Wolff's contacts with Michigan are limited to (1) a contractual relationship to represent an out-of-state client, (2) voluminous, routine emails and phone calls to plaintiff's offices located in Michigan, and (3) an occasional presence in Michigan[4] to take depositions for the Tennessee case. These contacts with Michigan are of insufficient nature and

---

[4] As noted preceding footnotes, the parties dispute whether Wolff attorneys appeared in person or by video regarding a small number of depositions that took place in Michigan. Although Wolff has discredited many of Hilburn's assertions, the Court finds that even if Wolff attorneys were present for these depositions, the nature and quality of such sporadic contacts are insufficient to support a finding of personal jurisdiction.

7

quality to show that Defendants have purposefully availed themselves in Michigan. First, the fee agreement between the parties contemplates applying Tennessee law, and was never signed by a Wolff attorney. Second, the routine emails and phone calls are "not necessarily sufficient themselves to establish minimum contacts." Klein Frank, 932 F.Supp.2d at 1214 (quoting Far W. Capital Inc. v. Towne, 46 F.3d 1071, 1077 (10th Cir. 1995)). Lastly, "[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited at its home state and takes no affirmative action to promote business within the forum state." Sher v. Johnson, 911 F.2d at 1363.

Defendants contacts with Michigan were for the purposes of litigating a Tennessee lawsuit. Defendants were solicited to conduct business in Tennessee. Defendants do not conduct business in Michigan, advertise in Michigan, nor seek the protections and benefits of Michigan laws. None of Defendants contacts created a continuous obligation within Michigan. Thus, Defendants connection with Michigan is attenuated, at best. Accordingly, exercising personal jurisdiction over Defendants would offend the constitutional limits of due process because Defendants have not purposefully availed themselves to Michigan jurisdiction. Accordingly, this case is DISMISSED, without prejudice.

SO ORDERED.

    s/Avern Cohn  
    AVERN COHN  
    UNITED STATES DISTRICT JUDGE

Dated: 3/28/2019  
Detroit, Michigan